# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

December 19, 2017
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**BONNIE S. RHODES,**
**Claimant Below, Petitioner**

**vs.)    No. 17-0544** (BOR Appeal No. 2051776)
                    (Claim No. 2014025570)

**REYNOLDS MEMORIAL HOSPITAL, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Bonnie S. Rhodes, by Christopher J. Wallace, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Reynolds Memorial Hospital, Inc., by James W. Heslep, its attorney, filed a timely response.

The issue on appeal is whether L4-5 degenerative spondylolisthesis and lumbar spinal stenosis should be added to the claim, whether lumbar spine surgery should be authorized, and whether temporary total disability benefits should be granted. The claims administrator closed the claim for temporary total disability benefits on August 11, 2015. On March 3, 2016, the claims administrator denied an L4-5 decompression and posterior fusion surgery and the addition of L4-5 degenerative spondylolisthesis and lumbar spinal stenosis to the claim. The Office of Judges affirmed the decisions in its January 10, 2017, Order. The Order was affirmed by the Board of Review on May 19, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Rhodes, a nurse's assistant, was injured in the course of her employment on February 18, 2014, while lifting a patient. The employee's and physician's report of injury indicates she was injured pulling a patient up in her bed. She sought treatment that day and was diagnosed with a lumbar strain. It was noted that she could return to modified work on February

1

20, 2014. The claim was held compensable for lumbar sprain, and the claims administrator closed the claim for temporary total disability benefits on April 18, 2014.

A lumbar MRI taken on May 3, 2014, showed an L4-5 disc bulge, a small lateral disc herniation, and facet arthropathy resulting in moderate spinal stenosis and bilateral recess stenosis. At L5-S1 there was degenerative disease of the bulge and a central protrusion without stenosis. At L3-4 there was bulging and spurring as well as facet arthropathy without stenosis.

In a February 10, 2015, independent medical evaluation, ChuanFang Jin, M.D., noted that Ms. Rhodes had lower back pain radiating into the right leg. Her MRI was suggestive of degenerative changes of the spine and degenerative disc disease. Dr. Jin opined that it is likely a preexisting condition and likely not the result of direct trauma. The diagnosis of lumbar sprain/strain was determined to be consistent with the mechanism of injury. Ms. Rhodes tripped over a linen cart in November of 2014 and reported worsening symptoms as well as the new symptom of urinary incontinence. Dr. Jin opined that she needed a new lumbar MRI but stated that it was necessary for the November injury. Ms. Rhodes had not yet reached maximum medical improvement due to her new symptom. She was unable to work at that time in her preinjury position. She could work at reduced capacity, though accommodations would be difficult. Dr. Jin recommended the lumbar MRI. If the MRI failed to show any nerve root or spinal cord compression, she was probably at maximum medical improvement. Dr. Jin stated that Ms. Rhodes's symptoms are more related to degeneration than a simple sprain/strain.

The claims administrator approved the repeat lumbar MRI on February 11, 2015. The MRI, taken on February 21, 2015, showed moderate spinal stenosis due to a disc bulge, spurring, and advanced facet arthropathy at L4-5. At L5-S1 there was a small right disc herniation resulting in mild right sacroiliac lateral recess stenosis. At L3-4 there was a disc bulge, spurring, and facet arthropathy without disc herniation or stenosis.

In an April 10, 2015, treatment note, Jack Wilberger, M.D., diagnosed back and leg pain. He stated that based on his evaluation, he cannot make any clear structural correlations between the complaints and the findings seen on the MRI. He recommended a lumbar myelogram. A lumbar myelogram was performed and showed moderate spinal stenosis and the potential for bilateral L4 radiculopathy. A CT scan showed a disc bulge with facet arthritic changes resulting in moderate spinal stenosis at L4-5. It also showed a small protrusion at L5-S1.

In a July 20, 2015, independent medical evaluation, Dr. Jin listed her impression as history of mechanical back injury with lumbar sprain/strain and preexisting degenerative disc disease with moderate stenosis at L4-5. Dr. Jin opined that Ms. Rhodes may require surgical decompression for the stenosis; however, that was not causally related to the compensable injury and was instead the result of the noncompensable, preexisting degenerative disc disease. Ms. Rhodes had reached maximum medical improvement for the compensable injury. She noted that the lumbar sprain did not accelerate or cause the degenerative process. Her current symptoms are the result of her preexisting, underlying degenerative disc disease and its natural progression. Ms. Rhodes had reached maximum medical improvement for the compensable lumbar strain. She reiterated that a lumbar sprain superimposed on degenerative disc disease is not a latent or

progressive injury and does not cause or accelerate the degenerative process. Dr. Jin assessed 5% impairment. She stated that Ms. Rhodes's significant degenerative disc disease may need further treatment, including possible surgery; however, the treatment is not compensable because it is not necessary for the treatment of the work-related injury.

In a treatment note dated January 5, 2016, John France, M.D., noted that Ms. Rhodes had attempted many non-operative treatments but they had failed. Her symptoms are ongoing and worsening and the result of the compensable injury. Dr. France recommended surgery. On January 26, 2016, Dr. France completed a diagnosis update seeking to add L4-5 degenerative spondylosis and lumbar spinal stenosis as secondary conditions.

Rebecca Thaxton, M.D., performed a physician review dated February 4, 2016, in which she found that payment for lumbar spine surgery and the addition of the diagnosis of L4-5 degenerative spondylolisthesis and lumbar spinal stenosis to the claim should be denied. Dr. Thaxton noted that the compensable lumbar sprain/strain occurred on top of preexisting degenerative changes. As Dr. Jin specifically discussed in her independent medical evaluation, any necessary surgery is not causally related to the compensable injury. The spinal stenosis was not caused by the compensable injury.

A lumbosacral x-ray taken on February 16, 2016, noted surgical changes at L4-5. The bones overall were demineralized. Spondylitic defects were noted outside of the surgical area. The StreetSelect Grievance Board determined that the claim is compensable only for a lumbar sprain/strain in its March 1, 2016, decision. Ms. Rhodes had reached maximum medical improvement and was released to return to work. The Board found that the addition of L4-5 degenerative spondylosis and lumbar spinal stenosis to the claim was properly denied as there was no evidence presented to show that the compensable injury presented a discreet new injury requiring surgery. It therefore recommended the denial of the addition of the requested conditions and the surgery to treat them.

The claims administrator closed the claim for temporary total disability benefits on August 11, 2015. The claims administrator denied an L4-5 decompression and posterior fusion surgery and the addition of L4-5 degenerative spondylolisthesis and lumbar spinal stenosis to the claim on March 3, 2016. The Office of Judges affirmed the decisions in its January 10, 2017, Order. It found that Ms. Rhodes injured her back while at work. Diagnostic studies showed significant arthritic changes in the lumbar spine as well as stenosis, arthropathy, disc spurring, and disc bulges. Dr. Jin determined that Ms. Rhodes may require cervical decompression for the stenosis, but it was not causally related to the compensable injury. Dr. Thaxton also found that the surgery was related to the preexisting degenerative changes and not the compensable lumbar sprain. The Office of Judges found that the claim is compensable for a lumbar sprain/strain but did not find sufficient evidence to provide a connection between the compensable injury and the significant degenerative changes seen in the lumbar spine. The addition of the degenerative conditions to the claim were therefore properly denied. Surgery to treat the noncompensable degenerative changes was also properly denied. The Office of Judges also found no evidence that Ms. Rhodes was entitled to additional temporary total disability benefits. The Board of Review

adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on May 19, 2017.

On appeal before this Court, Ms. Rhodes argues that the Office of Judges failed to consider the request to add spinal stenosis to the claim. She asserts that she had no history of radicular symptoms prior to the compensable injury. The medical evidence shows no diagnosis of stenosis prior to the compensable injury and the radicular symptoms did not occur until the compensable injury. She further argues that the spinal stenosis resulted in a separate spinal injury which should be held compensable per this Court's decision in *Gill v. City of Charleston,* 236 W.Va. 737, 783 S.E.2d 857 (2016). Reynolds Memorial Hospital argues that Ms. Rhodes failed to establish that she developed L4-5 spondylolisthesis and lumbar spinal stenosis as a result of the compensable injury. It asserts that *Gill* does not apply here because no discreet new injury has occurred. Ms. Rhodes's symptoms are a continuation of her preexisting conditions. Finally, it argues that spondylolisthesis is listed as a comorbidity that cannot be considered a compensable condition under West Virginia Code of State Rules § 85-20-37.8 (2006).

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The evidence indicates that Ms. Rhodes has significant degeneration in her spine. Spinal stenosis and other degenerative changes were seen on an MRI taken three months after the compensable injury occurred. Drs. Jin and Thaxton both concluded that L4-5 degenerative spondylolisthesis and lumbar spinal stenosis should not be added to the claim as they were not the result of the compensable injury. Their opinions are reliable and supported by the evidentiary record. This Court's decision in *Gill* does not apply in this case as Ms. Rhodes did not suffer a discrete new injury.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 19, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman

**DISSENTING:**
Justice Menis E. Ketchum

Justice Elizabeth D. Walker, disqualified.

4